**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1803-WJM-KLM

TRUSTILE DOORS, LLC,

    Plaintiff,

v.

ARCHITECTURAL CONCEPTS, LLC,
JOZETTE SANCHEZ, and
SCOTT COLBY,

    Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff TruStile Doors, LLC, accuses Defendants of various causes of action arising from alleged theft of trade secrets. (*See* ECF No. 1.) Currently before the Court is Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion"). (ECF No. 14.)[1] The Court previously denied the TRO portion of this motion, and directed a response as to the preliminary injunction portion. (ECF No. 19; *see also* ECF No 31.) The Court further stated that, upon receiving a response, it would "determine whether a reply brief and/or an evidentiary hearing is necessary." (ECF No. 19.)

The Court has now received a response from Defendant Architectural Concepts, LLC, and its owner, Defendant Scott Colby (ECF No. 25), and a separate response from Defendant Jozette Sanchez (ECF No. 36), who recently left Plaintiff's employ to join

---

[1] The Court struck Plaintiff's original motion as overlong. (*See* ECF Nos. 6, 11.)

Architectural Concepts. Having reviewed the parties' filings, the Court finds that neither a reply brief from Plaintiff nor an evidentiary hearing is necessary. For the reasons that follow, the Court denies the preliminary injunction portion of the TRO/PI Motion, and therefore denies the motion in its entirety.

## I.  BACKGROUND

The parties dispute most of the relevant facts. The Court need not resolve those disputes for purposes of the analysis below. The following allegations, taken from Plaintiff's perspective, are enough to frame the issues.

Plaintiff describes itself as "a leading manufacturer of high quality, made-to-order, architectural doors, servicing the high-end residential and commercial construction markets." (¶ 12.)[2]  Plaintiff "maintains certain confidential, proprietary, and trade secret information" in an "internal web-based folder." (¶ 14.)  This folder contains, for example, "AutoCAD files for every combination of every door manufactured by [Plaintiff]," documents showing "manufacturing performance trends and revenue," and documents showing "pay scale and promotion" information. (¶ 15.)  Employee access to this folder is on a need-to-know basis. (¶¶ 17–20.)  Plaintiff does, however, distribute "portions of its AutoCAD drawings to its vendors to the extent necessary to understand the construction of the product." (¶ 21.)  Plaintiff does not allege that these vendors must sign a non-disclosure agreement or otherwise commit not to disclose what they have received.

In June 2020, "a potential customer provided [Plaintiff] with a specification package that [Defendant Architectural Concepts] had written for a project." (¶ 73.)

---

[2] All "¶" citations, without more, are to Plaintiff's Verified Complaint and Jury Demand (ECF No. 1).

Within that specification package was one of Plaintiff's AutoCAD drawings, but without attribution to Plaintiff. (¶¶ 75, 77.) Plaintiff does not say if this was one of its complete AutoCAD drawings to which only certain of its employees have access, or if it was an AutoCAD drawing that had been disseminated to a third party.

In any event, Plaintiff began investigating, and apparently suspected that this had something to do with Defendant Sanchez. (¶ 79.) Sanchez had worked for Plaintiff since May 2000, eventually progressing to a "senior management position." (¶¶ 23, 37.) On January 15, 2020, she notified Plaintiff that she would be resigning and going to work for Architectural Concepts. (¶¶ 51, 70.) Architectural Concepts advertises itself as follows:

> Architectural Concepts is a single source distributor manufacturer and installer of architectural barn doors, doors, frames, hardware, shower enclosures, Architectural Metals (storefront & curtain wall) and glass products. The majority of our business is in the Hospitality industry and commercial market segments. We help write specifications and develop project budgets for owners, architects and designers across the U.S. as well as internationally.

(¶ 42.) Architectural Concepts "has historically been a customer of [Plaintiff] and has purchased [Plaintiff's] products for use in some of the projects that it secures." (¶ 43.) Plaintiff had learned in mid-2019, however, that Architectural Concepts had purchased equipment to manufacture doors. (¶ 44.)

Suspecting that Architectural Concepts was getting into the door-manufacturing business with the help of Sanchez, Plaintiff investigated Sanchez's e-mail usage in January and February 2020, when she remained employed by Plaintiff during an agreed-upon "wind down" period as she trained her replacement. (¶ 52.) Plaintiff discovered at least ten instances in which Sanchez e-mailed Plaintiff's proprietary

information from her work e-mail address to her personal e-mail address.  (¶¶ 54–63.) Two of these e-mails included AutoCAD files.  (¶¶ 57–58.)  Plaintiff does not say whether either of those files was the same AutoCAD file that made the round trip back to Plaintiff in June 2020.

Plaintiff believes that Architectural Concepts, via Sanchez, has stolen Plaintiff's trade secrets and plans to use them to compete against Plaintiff to supply doors to customers.  (*See, e.g.*, ¶¶ 45, 65–67.)  Plaintiff therefore asserts the following causes of action:

1. breach of contract, against Sanchez (¶¶ 116–24);

2. tortious interference with contract, against Architectural Concepts and Colby (¶¶ 125–30);

3. civil theft, against Architectural Concepts and Sanchez (¶¶ 131–38);

4. unjust enrichment, against Architectural Concepts and Sanchez (¶¶ 139–47);

5. misappropriation of trade secrets under Colorado law, against Architectural Concepts and Sanchez (¶¶ 148–57);

6. breach of the duty of loyalty, against Sanchez (¶¶ 158–64);

7. Lanham Act unfair competition, against Architectural Concepts (¶¶ 165–72);

8. Lanham Act trade dress infringement, against Architectural Concepts (¶¶ 173–80);

9. misappropriation of trade secrets under federal law, against Architectural Concepts and Sanchez (¶¶ 181–92); and

       10.    conversion, against Sanchez (¶¶ 193–200).

Plaintiff currently seeks a preliminary injunction requesting, among many other things, that Defendants be prohibited from using or disclosing Plaintiff's trade secrets; that Architectural Concepts cease manufacturing any type of door that mimics one of Plaintiff's doors in any way; and that "[f]ederal law enforcement . . . take immediate possession" of "any computers, computer hard drives, or memory devices in [Defendants'] possession that reasonably could contain [Plaintiff's] confidential trade secret information." (ECF No. 14-1 at 29–31.)

## II. LEGAL STANDARDS

### A. General Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal. *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The Tenth Circuit previously endorsed an alternate standard that relaxed the likelihood of success requirement when the other three factors tipped strongly in the movant's favor. *See, e.g.*, *Oklahoma ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006). The Tenth Circuit abrogated this standard in 2016, announcing that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1282 (10th Cir.

2016).

## B.     Whether a Heightened Standard Applies

Although the Tenth Circuit has abrogated its relaxed standards, the Tenth Circuit continues to endorse a heightened standard for "[d]isfavored preliminary injunctions," which do not

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted).

Given that the Court's analysis below turns on the irreparable harm element, the Court need not decide whether Plaintiff requests a disfavored preliminary injunction.

## III.  ANALYSIS

Among the preliminary injunction elements, "a showing of probable irreparable harm is the single most important prerequisite."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted) ("*Dominion Video II*").  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) ("*Dominion Video I*").  Irreparable harm "must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

The TRO/PI Motion spends nineteen pages on likelihood of success (ECF No. 14 at 3–22), but then devotes two paragraphs to irreparable harm (*id.* at 22–23).  Plaintiff's irreparable harm argument is that it will suffer a "loss of a competitive advantage in the manufacturing and sales of high quality, made-to-order architectural doors," and that "monetary damages would be difficult to calculate in this case" because Plaintiff "cannot predict the number of clients, or share of the high quality, made-to-order architectural doors market, that it could lose as a result of Defendants' conduct."  (*Id.* at 22–23.)

Concerning "loss of competitive advantage," Plaintiff apparently views this as a talismanic phrase that automatically supports irreparable harm, perhaps because it has been accepted in previous trade secret cases (all of which predate *Diné Citizens*, *supra*).  (*See id.*)  But "the Court may not presume irreparable harm simply because this case involves a noncompete covenant, trade secrets, or the like."  *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1130 (D. Colo. 2017).  Even before *Diné Citizens*, the Tenth Circuit rejected any automatic presumption of irreparable harm in cases similar to this one:

> Despite the general acknowledgment that irreparable harm often arises from the breach of [an exclusivity] agreement, courts do not automatically, nor as a matter of course, reach this conclusion.  Rather, they examine whether the harms alleged by the party seeking the preliminary injunction are in fact irreparable, and sometimes conclude in the negative.

*Dominion Video II*, 356 F.3d at 1263.

As for difficulty of calculating monetary damages because Plaintiff "cannot predict" what business will go to Architectural Concepts instead of Plaintiff, the Court is not persuaded.  Although Plaintiff has brought numerous legal theories against multiple defendants, the harm Plaintiff allegedly faces is essentially the same, namely, the

7

possibility that Architectural Concepts will secure contracts that it would not have otherwise secured, at Plaintiff's expense.  *If* that happens, damages are calculable: Architectural Concepts should pay to Plaintiff what Plaintiff would have earned on those contracts.  Plaintiff's inability to predict *whether* it will happen is not a basis for irreparable harm.

Thus, Plaintiff's motion fails on its face to demonstrate a sufficient likelihood of irreparable harm, and the Court need not examine the remaining elements of the preliminary injunction test.

## IV.  CONCLUSION

For the reasons set forth above, the preliminary injunction portion of Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 14) is denied, and so the motion is DENIED in its entirety.

Dated this 10th day of July, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge